No. 97-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 98

STAGELINE ESTATES HOMEOWNERS'
ASSOCIATION, INC., a nonprofit corporation,

Plaintiff and Respondent,

v.

RICHARD JACKSON and PAULA JACKSON,

Defendants and Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Richard Jackson; Richard Jackson and Associates,
Whitefish, Montana

For Respondent:

Stephen C. Berg; Warden, Christiansen, Johnson & Berg,
Kalispell, Montana

Submitted on Briefs: February 26, 1998
Decided:   April 30, 1998
Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Richard L. Jackson and Paula Jackson (Jacksons) appeal from the decision of the Eleventh Judicial District Court, Flathead County, determining that Stageline Estates Homeowners' Association, Inc.'s (Association's) assessments against the Jacksons was in accordance with the Association's Bylaws, Articles of Incorporation, and not beyond the scope of the Declaration of Covenants.  The District Court entered judgment in favor of the Association in the amount of $3,286 representing delinquent assessments plus interest and attorney fees and costs.  We affirm in part and remand for further consideration.

Factual and Procedural Background

¶2    Restrictive covenants concerning Stageline Estates subdivision in Flathead County were filed on April 21, 1988 by way of a document entitled "Declaration of Covenants, Conditions and Restrictions" (Declaration).  The Declaration established a Property Owners' Association (POA).  Pursuant to the Declaration, each owner of a lot subject to the covenants automatically became a member of the POA.  The Declaration states that the purpose of the POA "shall be to maintain and provide for snow removal on the private road and any other private road utilized by the members to their lots, and to provide the architectural control for the subdivision."  In addition, the Declaration provided a means for the POA to annually assess the members for the maintenance of the roads, including snow removal.  Finally, the Declaration provided that its provisions could be amended by an affirmative vote of 75% of its members.

¶3    On April 29, 1991, the Association filed Articles of Incorporation with the Secretary of State as a nonprofit corporation.  This document allegedly incorporated the original POA created by the Declaration.  In addition, the Association enacted Bylaws on November 15, 1991.  According to the Articles of Incorporation, the Association's purpose is "[t]o promote the health, safety and welfare of the residents . . . and to provide for the maintenance, preservation and architectural control of the residence lots and common areas . . . ."  In addition, the Bylaws provide the Association with authority to assess the members for "the purpose of promoting the recreation, health, safety and welfare of the residents of the Properties, and in particular for the improvement or maintenance of the Properties, and for the facilities devoted to the use and enjoyment of the Common Area."  These assessments may be imposed annually or pursuant to a "special assessment."

¶4    The Jacksons purchased their property within the subdivision on November 25, 1991.  The Jacksons acknowledge that they purchased their property subject to covenants contained in the Declaration, but allege that the Articles of Incorporation and Bylaws were not recorded at the time they purchased their property and thus the terms of those documents are not binding

on them.

¶5     The Jacksons paid annual assessments for the years 1992-94.  The Jacksons stopped paying the assessments in 1995 and have not paid since.  As a result, the Association filed a complaint in Justice Court on August 9, 1996 seeking to recover the unpaid assessments plus interest, attorney fees and costs.  The Justice Court entered judgment in favor of the Association in the amount of $1,634.  The Jacksons appealed to the District Court.  The Association filed a second complaint in District Court. The Jacksons filed an answer and counterclaim asserting that they did not purchase their property subject to the Articles of Incorporation and Bylaws of the Association.  The parties agreed to consolidate the Jacksons' appeal from Justice Court with the new complaint instituted by the Association.  The District Court entered judgment in favor of the Association in the amount of $3,286 concluding that the Association's imposition of assessments was in accordance with its Articles of Incorporation and Bylaws, and not beyond the scope of the Declaration. The Jacksons appeal to this Court seeking a reversal of the District Court judgment and a declaration that they are not bound by the terms of the Articles of Incorporation and Bylaws.  We affirm in part and remand for further consideration.

### Discussion

¶6       The standard of review of a district court's finding of fact is whether the court's findings of fact are clearly erroneous.  Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.  The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct.  Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.  We limit the scope of this opinion to the issue of whether the Jacksons are responsible for past-due assessments for the years 1995-97.  The Jacksons assert that they are not paying assessments because their property is subject only to the assessments authorized in the Declaration. The Declaration limits assessments to those collected for road maintenance and snow removal.  The District Court found that the assessments collected by the Association for the years in question "seem to be used exclusively for road-related purposes" and are in concert with the overall intent of the Declaration.  The court, therefore, concluded that the Association's imposition of the assessments against the Jacksons was in accordance with its Articles of Incorporation and Bylaws and not beyond the scope of the Declaration and held that the Jacksons are liable for the unpaid fees.

¶7     The Jacksons do not seek to avoid their obligation to pay the costs of road maintenance and snow removal.  However, the Jacksons contend that the authority given the Association in the Articles of Incorporation and Bylaws exceeds that contemplated by the Declaration and, thus, the Jacksons seek to preserve their right to object to the terms of the Articles of Incorporation and Bylaws in the event the Association seeks to enforce assessments other than those related to road maintenance.  The District Court's finding that the assessments collected to date by the Association were for the sole purpose of maintaining the road is not clearly erroneous.  Additionally, the District Court's conclusion that the assessments for road maintenance do not exceed

the scope of the Declaration is correct.  Therefore, since the road maintenance assessments are consistent with Article IV, sec. 5 of the Declaration, we hold that the Jacksons are responsible for the past-due assessments plus interest.

¶8    The Jacksons seek a declaration that their property is not bound by the terms of the Articles of Incorporation and Bylaws.  The District Court did not rule on the merits of the Jacksons' assertion that the Association has exceeded its authority in expanding the terms of the Declaration via the Articles of Incorporation and Bylaws.  We remand to the District Court the issue of whether the Articles of Incorporation and Bylaws are binding on the Jacksons. Affirmed in part and remanded.

                         /S/   W. WILLIAM LEAPHART

We concur:

/S/   J. A.   TURNAGE
/S/   JAMES C. NELSON
/S/   JIM REGNIER
/S/   KARLA M. GRAY

Justice Terry N. Trieweiler dissenting.

¶9    I dissent from the majority opinion.  Although Richard and Paula Jackson were bound by the Declaration of Covenants which applied to their subdivision, those covenants provided for assessments by the "property owners association" which assessments could be made for only limited purposes. Substitution of another entity for the property owners association, and assessment for purposes other than those mentioned in the original Declaration of Covenants, required amendment of the covenants by 75 percent of the property owners in the Jacksons' subdivision.  While the Articles of Incorporation and Bylaws, pursuant to which the plaintiff assessed the Jacksons, constituted actual amendments to the Declaration of Covenants, there was no evidence of 75 percent approval for those amendments and, therefore, no authority to assess pursuant to those Articles or Bylaws.  When Jacksons sought clarification and assurance that their assessments would be used for the limited purposes provided for in the original covenants, that type of assurance was denied and the corporation's attorney responded that the assessments would be used for all those purposes provided for in the Covenants, Articles, and Bylaws.  Therefore, I conclude that Jacksons were justified  when they  withheld payment of assessments made by a corporation unauthorized to make those assessments and for purposes beyond those provided for in the original Declaration of Covenants.  My reasons are more fully set forth as follows:

¶10  Jacksons purchased their property in a subdivision known as Stageline Estates in Flathead County on November 25, 1991.  At that time, there were on file with the Clerk and Recorder in Flathead County the documents referred to in the majority opinion as the Declaration of Covenants, Conditions and Restrictions.  Apparently, there were no Articles of Incorporation or Bylaws

on file at the Clerk and Recorder's office which pertained to this real estate.

¶11  The Declaration of Covenants provided for a property owners association which included every property owner in the subdivision.  The purpose of the property owners association was to maintain the private road through the subdivision and provide for snow removal on the road, as well as to provide for architectural control for the subdivision.  Toward that end, the association was given the authority to make assessments against each lot "for the purpose of maintaining the road(s) and for providing snow removal."  No group of people other than the association was authorized by the original covenants to make assessments, and no reason for assessments was authorized, other than road maintenance and snow removal.  The covenants otherwise primarily provided for architectural control.  However, the covenants also provided as follows:

ARTICLE VIII--AMENDMENT

1.   This Declaration may be amended by an instrument signed by Members representing 75% of the total maximum number of authorized votes, agreeing to such amendment.  Said instrument must be recorded with the County Clerk and Recorder.

¶12  There is no evidence that the Articles of Incorporation and Bylaws pursuant to which the plaintiff corporation assessed the Jacksons in 1995, 1996, or 1997 was signed by 75 percent of the subdivision's property owners, or that it was ever filed with the County Clerk and Recorder.  Yet, unbeknownst to Jacksons, those corporate documents substantially amended the Declaration of Covenants by shifting authority to make assessments from the property owners association to a small group of directors, by substantially expanding the purposes for which assessments could be made, by providing exemptions from assessments to certain property owners, and in other important respects.

¶13  For example, pursuant to Article III of the Articles of Incorporation, the new entity, now known as Stageline Estates Homeowners Association, Inc., exists for the additional purposes of acquiring water rights, real and personal property, easements, and the installation and maintenance of wells, reservoirs, and water mains.  The new corporation was given the authority to exercise all the powers and privileges previously exercised by the property owners association, including making assessments against property in the subdivision, but also to borrow money and pledge commonly owned property as security for its loans.

¶14  Pursuant to Article V of the Articles of Incorporation, the business and affairs of the corporation was now delegated to a board of three directors which included the original two developers, plus their attorney, as opposed to the previous property owners association.

¶15  The Bylaws reinforced the new corporation's authority to annex additional residential properties and common areas, gave the directors the

authority to employ a manager or independent contractor to handle the affairs of the corporation, gave the three directors authority to fix the amount of the annual assessment, provided for purchase of liability and hazard insurance by the board of directors, and expanded the purpose of assessments to include the following:

> Article XIII, Section 2. Purpose of Assessments: The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety and welfare of the residents of the Properties, and in particular for the improvement or maintenance of the Properties, and for the facilities devoted to the use and enjoyment of the Common Area.

¶16  In addition to the expanded purpose for the annual assessment, the Bylaws provided for special assessments for capital improvements which had not been provided for in the original Covenants, and exempted certain property owners from having to pay any assessments. Neither were those exemptions provided for in the original Covenants.

¶17  Jacksons have always been willing to honor their obligation for road maintenance and snow removal pursuant to the original Declaration of Covenants; however, they sought some sort of accounting before making that payment to assure that their contributions were being spent for an authorized purpose instead of the expanded and unauthorized purposes included in the Articles of Incorporation and Bylaws. For example, when Jacksons were notified of the board of directors meeting, the assessment made at that meeting, and the Bylaws pursuant to which the assessment was made by letter dated February 6, 1995, and signed by the three directors, Richard Jackson responded by letter dated February 20, 1995, that

> the Declaration of Covenants, Conditions and Restrictions which do govern the property do not provide for the establishment of any such organization. The only language in the Declaration of Covenants, Conditions and Restrictions which deal with a property owner's association provide that by being owners of property in this subdivision, the owners automatically become members of such an association for the specific purposes as set out in that document. . . . Further, in the Declaration of Covenants under which we are all bound, the purpose of the property owners association is limited solely to (a) maintaining and providing for snow removal on the private road and any other road utilized by members to their lots and (b) to provide architectural control of the subdivision. . . .
>
> In regard to the "assessments," the Declaration provides for annual assessments "for the purpose of maintaining the roads and for providing snow removal." This is the only use authorized for any such assessments, and I, along with all the other property owners, am bound by it. However, there is no provision for any additional use of those assessments, and again no provision for any new organization to be formed which would bind the property owners in any way outside the simple and very specific requirements of the Declaration of Covenants

itself.

. . . .

. . . Further, the latest letter from the property owners association that I received, dated August 19, 1994, reflects that there is a total of $3,758.32 in that fund, which it seems to me at the current cost of road maintenance and snow removal would be adequate to cover those costs for a considerable period of time without any further assessments against the property owners.  However, if you think that this is not going to be sufficient money, and you have some reasons why you think an additional assessment against the property owners for road maintenance and snow removal would be necessary, I would appreciate it if you could spell out those reasons for me in a letter so that I can understand what has been planned.

¶18  No response to Richard Jackson's legitimate inquiry is evident from the record before us.  Instead, it merely appears that he was threatened with suit for past due assessments.  In response to that threat, he made the following statements to the plaintiff's attorney by letter dated July 12, 1996:

If my involvement is limited to my status as a member of the "Property Owners Association" established by the Declaration of Covenants, Conditions and Restrictions filed in the Deed Records as I believe it is, then I am ready, and have been ready at all times, to do the same as all other property owners are bound to do, that is, pay my pro rata share of the "costs of maintaining the roads and for providing snow removal in the neighborhood."

On the other hand, if you somehow feel that I am bound by the rules and requirements or your new non-profit corporation, its By-laws, procedures, assessments for recreation, health, safety and welfare, exemptions from assessments, committees, etc. please tell me how that could have happened, because I have never agreed to anything more than is contained in the Declaration of Covenants, Conditions and Restrictions filed in the Deed Records, which run with the land.

¶19  After he was sued in Justice Court and judgment was entered in favor of the corporation, Richard Jackson indicated his intention to appeal that judgment so that his obligations could be clarified by the District Court.  However, pending that appeal he offered to pay immediately any sums which the corporation could assure him would be used only for the costs of maintaining the roads and providing snow removal in the neighborhood.  In response, the attorney for the defendant corporation stated:

You and the board have a fundamental difference of opinion as to the authority of the Association.  This difference prevents settlement on the terms you propose.  The board cannot, within its authority, create two classes of homeowners/members: one that pays its dues and assessments in accordance with the covenants, articles and bylaws, and

another that is willing to pay its dues and assessments in accordance with its more restrictive interpretation of the same documents in consideration for which the board would waive enforcement of the documents as to nonroad maintenance/snow removal matters.

(Emphasis added.)

¶20  In other words, contrary to the inference in the majority opinion, at no time has the corporation been willing to limit its expenditure of the assessments made by its board of directors to those purposes specifically provided for in the Declaration of Covenants.  Furthermore, during the trial of this matter, Martin White, who is vice president of the corporation, testified that only 70 to 80 percent of the proceeds from the corporation's assessments is spent on snow removal and road maintenance.  That means that 20 to 30 percent of the current corporation's assessments is being spent for purposes not provided for in the original Declaration of Covenants.  Therefore, I conclude that when the District Court found that the assessments for the years in question were used for a purpose consistent with the original declaration, that finding was clearly erroneous.  Part of the fund's use was consistent with the limitation provided for in the original declaration; however, part was not consistent.  Furthermore, no one from the new corporation was ever willing to clarify until the time of trial what part of the assessments were being used for the original and only legally authorized purpose, and what part was going to be used for some new, expanded, and unauthorized purpose.  Finally, I conclude that the board of directors of the new corporation had no authority to make any assessments in the first place.  The only group with authority to make the assessments, absent an amendment to the original declaration, was the property owners association, which included each lot owner in the subdivision.  To transfer the assessing authority to a small group of three people required an amendment to the Declaration of Covenants by 75 percent of the homeowners, and that was not done.

¶21  For these reasons, I dissent from the majority opinion.  I would reverse the judgment of the District Court and remand this case to the District Court for entry of judgment in favor of the defendants, Richard and Paula Jackson.

/S/  TERRY N. TRIEWEILER


Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.


/S/  WILLIAM E. HUNT, SR.